ATHENS CHRISTIAN CHURCH OF ATHENS, Kentucky, Charles Baesler, Homer Turner, S. B. Kelley, Edward Guilfoil, and Douglas Guilfoil, Trustees of Athens Christian Church of Athens, Kentucky, Appellants,

v.

John H. STEVENS, Jr., Lisa Lane Rice, William K. Rice, Jr., Carter McLeod Rice, the Unborn Issue of John H. Stevens, Jr. Born after February 24, 1943, Henry L. McLendon, White, McCann & Stewart, Saco, Inc., Robert L. Gullette, Individually and as Warning Order Attorney for the Unborn Issue of John H. Stevens, Jr. Born after February 24, 1943, Robert Walker, Individually, and as Guardian ad litem for Lisa Lane Rice, William K. Rice, Jr., and Carter McLeod Rice, and William K. Rice, Statutory Guardian for Lisa Lane Rice, Appellees.

Court of Appeals of Kentucky.

Nov. 18, 1977.

As Modified On Denial of Rehearing Feb. 10, 1978.

Frank S. Ginocchio, Lexington, for appellants.

White, McCann & Stewart, Winchester, for appellees, John H. Stevens, Jr. and White, McCann & Stewart, and Henry L. McLendon.

Brown, Sledd & McCann, Lexington, for appellees, Robert Walker, individually, and as guardian ad litem for Lisa Lane Rice, William K. Rice, Jr. and Carter McLeod Rice.

Robert L. Gullette, Nicholasville, for appellees, the unborn issue of John H. Stevens, Jr., and Robert L. Gullette.

**104**

Julius E. Rather, Lexington, for appellee, Saco, Inc.

Before GANT, HOWERTON and WHITE, JJ.

GANT, Judge.

This is a many faceted case involving judicial approval of a private sale. The matter begins with the will of Lillie Sharp Stevens, who died July 21, 1943, and who devised certain property in the following manner:

ITEM III. I give and devise my farm in Jessamine County, Kentucky on the Lexington-Nicholasville Road and such other farm or farms as I may own at the time of my death to my son, JOHN H. STEVENS, JR., for and during his natural life, and with the remainder in fee simple to the issue of my said son as shall be born hereafter, share and share alike, but if my said son does not leave a living issue, born after the date of this writing, surviving him, then, in that event, and if my husband, JOHN H. STEVENS, SR. of Fayette County, Kentucky, survives my said son, I give and devise said farm and such other farm or farms that I may own at the time of my death, to my said husband, for and during his natural life, with remainder in fee simple to the Trustees of the Athens Christian Church of Athens, Kentucky. Should my said husband predecease my said son, and if my said son leaves no living issue, which shall hereafter be born, surviving him, then, in that event, at the time of his death, I give and devise the said remainder estate in said farm and such other farm or farms that I may own at the time of my death, to the Trustees of the Athens Christian Church of Athens, Kentucky, in fee simple. I hereby request that my son provide a home for my husband as long as he lives. My son shall have the privilege of selling my said farm in Jessamine County, Kentucky, and such other farm or farms that I may own at the time of my death, upon such terms, provisions or conditions as he deems best and without authorization, consent or approval of any

other person or tribunal, provided, however, that the proceeds from said sale shall be invested by him in other real estate, subject to the limitations, provisions and terms of this item of my will.

The son of the testatrix, John H. Stevens, Jr., violated the terms of the will in 1947 by conveying one of the farms placed in trust and failing to invest the proceeds under the terms thereof. Thereafter, a suit was filed in the Jessamine Circuit Court, which court entered a judgment divesting the appellee of any right, power or authority to sell or convey the other farm and requiring court approval of any future sale. The farm in question in this action is a 125-acre tract situated on the Lexington-Nicholasville Pike in Jessamine County, Kentucky, about one to one and one-half miles south of the Fayette County line.

In January, 1972, Saco, Inc. submitted an offer to Stevens, the life tenant, to purchase the 125-acre farm for $200,000. This offer was apparently made through one Henry L. McLendon, who is a cousin of Stevens and who obtained a Power of Attorney from Stevens at a time when he was in the penitentiary in Eddyville. This offer, in pertinent part, was as follows:

1. We have deposited with White, McCann & Stewart, attorneys of Winchester, Kentucky, the sum of $100.00 as a good faith binder to be applied towards the purchase price as hereinafter set forth or to be refunded to us if this offer is not accepted or if the unencumbered fee simple title to said property, subject only to existing utility easements, public roads, and a lease thereon, is not conveyed to us or our assigns prior to July 10, 1972.

2. It is understood that if the offer is accepted by John H. Stevens, Jr. as life tenant, it will be necessary to file or redocket an action in the Jessamine Circuit Court to secure approval of the contract and the execution of a proper deed. *This offer shall continue in effect until January 17, 1972, for acceptance by the life tenant. If so accepted within said period of time, it is understood that the*

*execution and Court approval of the deed will be obtained as soon as is reasonably possible thereafter, and in any event not later than July 10, 1972.* When accepted by the life tenant, we will deposit an additional $9,900.00 with the attorneys above, as additional good faith binder to be held or returned as provided in paragraph 1.

The offer further provided that the realtor/cousin/Attorney-in-Fact receive a commission of 8% ($16,000.00), that payment be made in ten equal annual installments, and contained other provisions.

The lower court entered judgment approving the sale and adjudicating certain other points raised by the appellee and others, and it is from that judgment that an appeal was taken.

Many issues were raised on this appeal, only two of which will be considered here. The first is the offer, which had expired under its own terms. The offer provided for two acceptances, the first by the life tenant which had to be made within seven days of the date of the offer and which acceptance was apparently received. The offer provided that, upon receipt of that acceptance, the offeror would deposit an additional $9,900.00 with the attorneys for the life tenant. There was absolutely no proof that this $9,900.00 had ever been deposited, although the life tenant, in his deposition, stated that it was his understanding that some sum had been deposited.

The second acceptance was required by "Court approval of the deed . . . not later than July 10, 1972." The complaint was filed in this action on May 1, 1972, when only approximately six weeks remained on the offer. An amended complaint was filed February 2, 1973, over six months after the offer had expired. The judgment was entered January 21, 1975, over two and one-half years after the offer had expired.

■ The sole proof in this action was the deposition of an appraiser, who stated that $200,000, under the circumstances, was the fair market value of the land in question. The other deposition was a rather jumbled and inconclusive deposition of the life tenant. There was not one scintilla of evidence that the offer had ever been amended or extended. Thus, the effect of the judgment was to permit an offer to sell, not to accept an evaporated offer. It is beyond the power of the court under KRS 389.030 to approve an *offer.* The function of the court thereunder is to approve a *sale* pursuant to a binding offer, not to try to breathe life into a dead offer. The judgment of the court in approving a sale "in accordance with the terms and conditions of said contract" when there was no contract is obviously a nullity.

■ Additionally, KRS 389.030 provides that the court may authorize the consummation of a private sale provided "the chancellor finds the terms and price satisfactory." In the instant case, there was certainly sufficient evidence for the chancellor to find the "price" satisfactory but there was a total absence of evidence concerning the "terms" of the contract. In the instant case, the contingent remaindermen were infants and a church. The offer was made to a life tenant who had previously abused his trust through a cousin who conveniently wrote himself into the contract for an 8% real estate commission, admittedly 2% to 3% higher than the rate customarily charged in this county. This was not a case in which the offeror had made arrangements for financing through a reputable agency, but the life tenant and the remaindermen were required to finance some 80% of the purchase price. Under these circumstances, there was an obligation on the part of the court, pursuant to repeated requests by the contingent remaindermen, to investigate the solvency and financial condition of the offeror to determine that the terms and conditions of the offer could be met and performed by the offeror. In the absence thereof, there was a breach of duty by the chancellor.

Accordingly, the judgment herein is reversed and the circuit court is directed to enter judgment dismissing the action.

All concur.